IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**JESSICA OTTENBAKER,**

    **Plaintiff,**

v.                                **CIVIL ACTION NO.:** 3:22-cv-00533
                                       **JURY TRIAL DEMANDED**

**TRULIEVE WV, INC.,**

    **Defendant.**

## COMPLAINT

Your Plaintiff, Jessica Ottenbaker, by her counsel, Eric Anderson, Esq., and Hoyt Glazer, Esq., files this legal action against the Defendant, Trulieve WV, Inc. ["Trulieve"]. Your Plaintiff seeks redress and remedy arising from the Defendant's deliberate gender discrimination, failure to comply with the provisions of The Family Medical Leave Act of 1993 ("FMLA") and the public policy and common law of the State of West Virginia prohibiting illegal FMLA discrimination.

## PARTIES

1. Plaintiff, Jessica Ottenbaker, is a citizen and resident of Cabell County, West Virginia.

2. Defendant, Trulieve, is an American corporation that produces and distributes medical cannabis products in West Virginia with its principal place of business in Tallahassee, Florida.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this civil action under Article III, §2 of the United States Constitution and 28 USC §1331.

1

4. Venue is appropriate in this case under 28 USC §1391(b) because Defendant does business in Huntington, West Virginia, which is in the Southern District of West Virginia.

## ALLEGATIONS OF FACTS

5. On or about September 9, 2020, Ms. Ottenbaker was hired by Trulieve as a labeling technician in Midway, Florida.

6. Ms. Ottenbaker worked full, 40-hour weeks, and her beginning hour rate of pay was $14.00.  Ms. Ottenbaker received her first raise just a couple of months later and was paid an increased hourly rate of $16.00.

7. On or about January 2022 Ms. Ottenbaker was offered a promotion as a "labeling lead" with Defendant's company at its Lesage, West Virginia facility.  Ms. Ottenbaker accepted the promotion and, soon thereafter, moved to West Virginia.

8. On or about March 2022, Ms. Ottenbaker was promoted to "Production Supervisor" and was paid an annual salary of $50,000.

9. In March 2022, Ms. Ottenbaker found out she was pregnant. She then informed her supervisor, Michael Sickler, of her pregnancy and informed him that she will have scheduled medical visits in order to receive proper prenatal care.

10. On or about September 23, 2022, Mr. Sickler informed Ms. Ottenbaker of specific things she needed to improve on at work.  Soon thereafter, Ms. Ottenbaker improved her job performance and drafted a detailed analysis of her improved production to Mr. Sickler on or about September 26, 2022.

11. On or about October 2022 Mr. Sickler informed Ms. Ottenbaker that her job performance had greatly improved.

12. Soon after, Trulieve hired Christopher Allen as a Manufacture Supervisor. Ms. Ottenbaker immediately informed Mr. Allen that she had three, separate medical appointments scheduled for the week of October 10, 2022, and that she had an approved vacation week the following week. Mr. Allen never made an issue with Ms. Ottenbaker's request for leave for medical appointments or for her previously approved vacation.

13. Prior to Ms. Ottenbaker attending her medical appointments, she delegated her job duties to Christopher Cleary, a package technician.

14. While attending one of her medical appointments, Ms. Ottenbaker was informed by her supervisor, Christopher Allen, that she had failed to complete an important job duty. Ms. Ottenbaker informed Mr. Allen that the specific job duty in question was the responsibility of Mr. Cleary due to her being out for a medical appointment.

15. Soon after returning from vacation, Defendant Trulieve terminated Ms. Ottenbaker's employment, stating that her termination was due to poor job performance. However, Trulieve never provided Ms. Ottenbaker any proof that her job performance was less than satisfactory.

16. Trulieve wrongfully terminated Ms. Ottenbaker immediately after she requested leave for her medical appointments. Furthermore, Trulieve failed to inform Ms. Ottenbaker that she had the right to request Family Medical Leave under the FMLA for her prenatal appointments.

17. Trulieve wrongfully terminated Ms. Ottenbaker's employment because of her medical condition.

18. As a result of Trulieve's termination of her employment, Ms. Ottenbaker has lost wages, benefits, and will continue to suffer wage loss until she finds suitable employment.

### COUNT I: INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER THE FAMILY MEDICAL LEAVE ACT OF 1993

19. Plaintiff incorporates the previous paragraphs as if set forth herein.

20. At all times mentioned, Plaintiff was qualified and eligible to take leave under the FMLA to attend any and all medical appointments to seek medical treatment and observation for her pregnancy.

21. Plaintiff had a serious health condition as defined in the FMLA 29 C.F.R. §825.113.

22. Prior to and at the time of her termination, Plaintiff had been employed by Defendant longer than twelve (12) months and had worked at least 1250 hours of service for Defendant during the past twelve (12) months preceding her termination.

23. Defendant is and was a covered employer under the FMLA and employed 50 or more people within 75 miles of the location where Plaintiff was employed.

24. The FMLA requires that "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for a FMLA-qualifying reason, the employer **must notify** the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. §825.300(b)(1) [emphasis added].

25. Under 29 C.F.R. §825.300(b)(1), the notice "must state whether the employee is eligible for FMLA leave." If the employee is not eligible, the notice "must state at least one reason why the employee is not eligible." Id. §825.300(b)(2).

26. The employer must also provide notice of the employee's rights and responsibilities under the FMLA each time eligibility is required/provided. 29 C.F.R. §825.300(c).

27. Plaintiff requested leave to attend three separate medical appointments during the same week, all relating to her pregnancy. Although the time off was granted, Defendant never informed Plaintiff of her eligibility and rights under FMLA, which is required by federal law.

28. At no time did the Defendant provide FMLA's statutorily required notice to Plaintiff, resulting in prejudice to Plaintiff and impairment of her legal rights because she could not make informed decisions about her medical leave, which includes, but is not limited to the duration of her protected FMLA leave.

29. Defendant's actions against Plaintiff up to and including her termination were reckless and in deliberate disregard of the FMLA's notice provisions.

30. Defendant failed to provide Plaintiff with the required, individual notice of her rights and eligibility to take FMLA leave to care for her pregnancy.

31. Defendant's termination of Plaintiff shortly after she needed leave and/or at a time when she notified Defendant that she had a medical condition requiring ongoing treatment and follow up care was reckless and in deliberate disregard of the FMLA's notice provisions and Plaintiff's rights under the FMLA.

32. In terminating Plaintiff when Defendant knew she was eligible for FMLA, Defendant interfered with and violated Plaintiff's rights under the FMLA, which caused Plaintiff prejudice, and Plaintiff seeks all appropriate relief as requested in her prayer for relief.

**COUNT II: RETALIATION FOR EXERCISING RIGHTS AND ENGAGING IN PROTECTED CONDUCT UNDER THE FAMILY AND MEDICAL LEAVE ACT**

33. Plaintiff incorporates the previous paragraphs by reference as if set forth herein.

34. Before requiring FMLA leave and notice, Plaintiff had been employed by Defendant for longer than 12 (twelve) months in the year preceding her termination and had worked at

least 1250 (twelve hundred fifty) hours of service for Defendant during the previous twelve-month period.

35. When Plaintiff notified Defendant of her pregnancy and her need to take time off from work to care for her, she gave adequate and proper notice of her need to take FMLA leave.

36. When Plaintiff requested and/or required FMLA leave, she was qualified and eligible for FMLA leave.

37. In seeking FMLA leave, Plaintiff engaged in conduct protected under the FMLA that entitles her to all relief available under the FMLA.

38. Defendant took adverse action against Plaintiff up to and including termination because Plaintiff requested and/or was eligible for FMLA leave.

39. Defendant's reason for terminating Plaintiff resulted from her having been eligible for FMLA leave.

40. Defendant's conduct up to and including terminating Plaintiff is and was in bad faith, malicious, reckless and purposefully indifferent to Plaintiff's FMLA rights, and he seeks relief as set forth below.

## COUNT III: RETALIATORY DISCHARGE (*VANDEVANDER* CLAIM)

41. Plaintiff incorporates the previous paragraphs by reference as if set forth herein.

42. Before her termination by Defendant, Ms. Ottenbaker had performed all conditions, covenants, promises, duties and responsibilities required of her and in accordance and conformity with Defendant's legitimate expectations.

43. When Plaintiff requested leave for her medical appointments and for her weeklong vacation the week after attending her medical appointments, Plaintiff was informed that her job performance was either satisfactory or better than satisfactory.

44. Prior to Plaintiff attending her medical appointments and her vacation, she delegated any and all of her job duties to another well-known responsible employee, Christopher Cleary.

45. While at one of her medical appointments, Plaintiff was informed by her supervisor, Christopher Allen, that she had failed to complete an important job duty. Plaintiff informed Mr. Allen that the specific job duty in question was the responsibility of Mr. Cleary due to her being out for a medical appointment.

46. However, when Plaintiff returned to work after her vacation Defendant terminated her for poor job performance relating to the job duty that was not performed during her absence. Therefore, it is clear that Defendant retaliated against Plaintiff for request time off to attend a medical appointment, which is in clear violation of FMLA.

47. Plaintiff's discharge followed her protected activity (requesting time off to attend medical appointments relating to her prenatal care) within such a period of time (a few days after she had taken leave to attend said medical appointments) that the Court can make an incredibly strong inference of retaliatory motivation.

48. The Defendant's treatment and termination of Plaintiff is a retaliatory and wrongful discharge in violation of the public policies embodied in the FMLA. *Vandevander v. Verizon Wireless*, *LLC*, 149 F. supp. 3d 724, 731 (S.D.W. Va. 2016)(Chambers, J.)(noting FMLA provides a substantial public policy sufficient to support a West Virginia common law claim and for retaliatory discharge in violation of public policy; *Collins v. Defendants Home Ctrs.*, *LLC*, 2017 U.S. Dist. LEXIS 201430 (S.D. W.Va. December 7, 2017)(Chambers, J.) (Following *Vandevander*).

49. As a direct and proximate result of Defendant's intentional, discriminatory, and retaliatory acts against her, Plaintiff has suffered and continues to suffer injury, including, but not

limited to, loss of past and future earnings and other benefits of employment, anguish, pain and suffering, humiliation, loss of enjoyment of life, costs associated with obtaining employment, embarrassment, damage to her reputation and other past and future pecuniary losses. Wherefore, Plaintiff seeks relief as set forth below.

50. Defendant and its agents knew or reasonably should have known that their actions taken against Plaintiff were false, wanton, willful, and malicious and designed and intended solely to harm her.

## COUNT IV: GENDER DISCRIMINATION

51. Plaintiff incorporates the previous paragraphs as if set forth here.

52. Throughout her employment, Plaintiff satisfied all requisite job qualifications, was qualified for the position she held, and performed her job in a manner that met or exceeded Defendant's legitimate expectations.

53. Under § 5-11-3(h) of the West Virginia Human Rights Act, the term "discriminate", or "discrimination" means to "exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status…"

54. Defendant treated employees who are not female more favorably than Plaintiff because they are male.

55. Ms. Ottenbaker is female, which is a protected class under West Virginia Code § 5-11-3(h) of the West Virginia Human Rights Act, West Virginia Code § 5-11-1 *et. seq*.

56. On information and belief, employees who are not female were allowed to continue their employment despite having lesser qualifications and/or performance issues in contrast to

Plaintiff in violation of the West Virginia human Rights Act's prohibition against gender discrimination.

57. The Plaintiff's gender was a motivating factor in the Defendant's decision to take the above-described adverse actions against her including, but not limited to, terminating her employment after Plaintiff sought temporary leave for regular prenatal medical care.

58. Defendant's treatment of Plaintiff because of her sex was done with malice and with reckless indifference to Plaintiff's rights and Plaintiff's emotional and physical well-being under the West Virginia Human Rights Act, and Plaintiff seeks damages for the same.

### COUNT V: PREGNANCY DISCRIMINATION

59. Plaintiff incorporated the previous paragraphs as if set forth here.

60. Plaintiff learned she was pregnant in March of 2022. Plaintiff immediately informed her supervisor of her pregnancy and that she would need occasional time off to attend her medical appointments.

61. The Pregnancy Discrimination Act of 1978 prohibits discrimination on the basis of pregnancy, childbirth, or related medical conditions. Here, Plaintiff was previously granted leave by her supervisor to be able to attend three, separate medical appointments throughout the same work week. Plaintiff followed the appropriate protocol in order to have another employee, Christopher Cleary, to assume any and all job duties of Plaintiff while Plaintiff was at her medical appointments.

62. Defendant wrongfully blamed Plaintiff for failing to properly complete a job duty while Defendant knew or had reason to know that Plaintiff was out for a medical appointment involving her current pregnancy. Defendant wrongfully terminated Plaintiff's employment due to Plaintiff's pregnancy.

63. Defendant's treatment of Plaintiff because of her pregnancy was done with malice and with reckless indifference to Plaintiff's rights and Plaintiff's emotional and physical well-being under the Pregnancy Discrimination Act, and Plaintiff seeks relief for the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jessica Ottenbaker requests judgment against the Defendant as follows:

a. On all Counts, actual damages including, but not limited to, damages for lost wages (back and front pay), and lost compensation and benefits as a direct and/or proximate result of the above stated unlawful actions;

b. On Counts I and II, liquidated damages and all amounts recoverable under the FMLA;

c. On Counts III, IV, and V general and compensatory damages for annoyance, inconvenience, embarrassment anxiety, humiliation, and any other emotional harm suffered by Plaintiff as a direct and/or proximate result of Defendant's aforementioned actions;

d. On Counts III, IV, and V punitive damages against the Defendant sufficient to deter future improper and unlawful conduct and blatant disregard of mandates designed to protect West Virginians from discrimination;

e. Attorneys' fees and the costs of pursuing this action;

f. Prejudgment and post judgment interest on all amounts allowed by law;

g. Such further relief as is supported by the law; and

h. Any relief this Court deems fair and proper in the interests of justice.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES.**

PLAINTIFF, JESSICA OTTENBAKER
By her counsel,

s/Eric Anderson
Eric Anderson, Esq. (WV Bar #11895)
Hoyt Glazer, Esq. (WV Bar #6479)
GLAZER SAAD ANDERSON L.C.
320 9TH STREET, SUITE B
P.O. BOX 1638
Huntington, WV 25717
T. 304-522-4149
F. 800-879-7248
eric@gsalaw-wv.com